UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

GREGORY CARTER,

Defendant.

18 Cr. 390 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Gregory Carter seeking compassionate release from FCI Fort Dix, pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates.

Carter was involved with a large-scale drug trafficking scheme between 2015 and 2018, distributing heroin, mixed with fentanyl, to low-level suppliers. *See* Dkt. 308 ("Sentencing Tr."). On December 17, 2018, Carter pled guilty to one count of conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. § 841(b)(1)(B). Dkt. 295. On March 18, 2019, the Court sentenced Carter to 75 months' imprisonment, below the advisory Guidelines range of 108–135 months. *See* Sentencing Tr. at 14. Carter has been incarcerated since June 5, 2018—or, approximately 24 months. His current estimated release date is October 21, 2023.[1] Dkt. 447 ("Def. Mem.").

On March 31, 2020, Carter submitted a request to the Bureau of Prisons ("BoP"), seeking his compassionate release. Def. Mem. at 4. On April 16, 2020, his application was denied, with

---

[1] According to the defense, but for an outstanding warrant, Carter's completion of the 500-hour "RDAP" rehabilitation program would have reduced his sentence by a year. Def. Mem. at 3. The Court has nevertheless taken these rehabilitative efforts into account.

further explanation provided by BOP in a letter dated April 27, 2020.  *Id.*; *see id.*, Ex. B.  On May 29, 2020, Carter filed the present motion, seeking his immediate release from custody on grounds relating to the COVID-19 pandemic.  Def. Mem. at 2–3.  Carter argues that he suffers from medical conditions that heighten his vulnerability to COVID-19 and that he has displayed a commitment to rehabilitation during his time in prison.  *Id.* at 10.

On June 3, 2020, the Government filed a brief in opposition.  Dkt. 450 ("Gov't Opp'n").  The Government argues that Carter has not properly exhausted his administrative remedies, that he has yet to serve the majority of his sentence, that his offense was serious, and that his health conditions are not so severe as to warrant a reduction in his sentence.  *See generally id.*  On June 7, 2020, Carter replied.  Dkt. 454 ("Def. Reply").  On June 8, 2020, the Government filed a letter in response to Carter's reply.  Dkt. 455.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Here, the Government argues at the threshold that Carter's motion should be denied because he has failed to exhaust his administrative remedies.  Gov't Opp'n at 10–11.  The Government acknowledges that Carter made a request to the warden at FCI Fort Dix, which was denied, but argues that Carter sought release to care for his autistic child, not due to the threat to Carter's health posed by COVID-19.  Gov't Opp'n at 1.  Thus, the Government argues, to the

extent Carter now relies on his own medical conditions in light of the pandemic, Carter had not commenced, let alone exhausted, the administrative review process, as the BOP never received information relating to COVID-19.[2]  Gov't Opp'n at 10.  Carter, in turn, argues that his *pro se* administrative application for compassionate release relied on a pre-printed form, and the Court should construe his application as a pandemic-related request for relief in light of the special solicitude afforded to *pro se* litigants.  Def. Reply at 2–3.  The Court need not decide whether Carter properly exhausted his administrative remedies, however, because the Court concludes, on the merits, that a reduction of Carter's sentence is not supported by the "factors set forth in section 3553(a)."  18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)).  Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[3]  U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant

---

[2] Carter's request to the warden referenced in passing one of his medical conditions, but did not mention the COVID-19 pandemic; Carter's alternative reasons for seeking compassionate release, involving family matters, were by far predominant.  *See* Gov't Opp'n, Ex. 1.

[3] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *Ebbers*, 2020 WL 91399, at *1, 4.

must also not be a danger to the community and the reduction must be consistent with the

Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

Carter argues that the first of these factors favors his early release.  The COVID-19

pandemic is indeed extraordinary and unprecedented in modern times in this nation.  It presents a

clear and present danger to free society for reasons that need no elaboration.  And the crowded

nature of jails and prisons presents an outsize risk that the COVID-19 contagion, once it gains

entry, will spread.[4]  Recognizing that the realities of life as an inmate present added challenges for

a heightened-risk inmate who contracts the virus to care for himself, in the past few months

numerous courts, including this one, have ordered the temporary release of inmates held in

pretrial or presentencing custody and, in more limited instances, the compassionate release of

high-risk inmates serving federal sentences.[5]

---

[4] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[5] *See, e.g., United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a 4-month sentence); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), Dkt. 451 (S.D.N.Y. April 2, 2020) (ordering compassionate release of defendant with asthma who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

The Government disputes that Carter is at a significantly heightened risk—*i.e.*, whether he is materially more vulnerable to the effects of COVID-19 than an average (non-high-risk) inmate at FCI Fort Dix.[6]  However, even assuming, *arguendo*, that Carter's medical conditions put him at higher risk than the average inmate, a reduction in his sentence is not supported under § 3582(c)(1)(A).  Granting Carter's early release here would yield an overall sentence highly inconsistent with the § 3553(a) factors—in particular, "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . [and] to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a).  For the reasons explained in detail at Carter's sentencing, Sentencing Tr. at 43–58, which the Court incorporates by reference here, Carter's "significant role" in a "very large-scale conspiracy to sell heroin laced with fentanyl" required a lengthy sentence then, *id.* at 45, and still does so now.  As the Court explained, "[h]eroin dealing, including heroin laced with fentanyl, is an epidemic in this city and this country," *id.* at 48, and Carter was "a meaningful contributor" to that epidemic, *id.* at 46.  The subsequent advent of a global pandemic does not change that finding and cannot justify a reduction of more than half of Carter's sentence here.[7]

Carter's case stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates.  In a number of cases, where an inmate seeking release had served

---

[6] Carter points to several medical conditions, including hypertension and diabetes.  Def. Mem. at 2–3; Def. Reply at 3–4.  However, the Government notes that Carter has pre-diabetes, not diabetes, and, as a 37-year old, is not in a high-risk age category.  Gov't Opp'n at 2, 18.

[7] The Court does, however, note and commend the efforts Carter has taken with regard to his own rehabilitation, including his participation in a 500-hour drug abuse program "RDAP" and his enrollment in a GED course.  *See* Def. Mem. at 11.  These efforts, along with Carter's apparently clean record with regard to disciplinary infractions during his incarceration, are encouraging and suggest Carter's authentic commitment to productively reintegrating into society upon his release.  However, they do not justify Carter's immediate release.

most of his or her term of incarceration, this Court has found that a fresh assessment of the § 3553(a) factors justified early release.[8]  Carter, however, is not yet at the midway point of his sentence.  In these circumstances, his immediate release would be entirely inconsistent with the § 3553(a) factors.[9]

Accordingly, finding that the § 3553(a) factors are inconsistent with the termination of Carter's prison sentence, the Court denies Carter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated:  June 8, 2020
         New York, New York

---

[8] *See, e.g.*, *United States v. Jasper*, Dkt. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (defendant had served all but 34 days of a 4-month sentence and had an immune-inflammatory disease); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), Dkt. 451 (S.D.N.Y. April 2, 2020) (defendant was scheduled for release in four months and had asthma); *United States v. Knox*, 15 Cr. 445 (PAE), Dkt. 1078 (S.D.N.Y. April 2, 2020) (defendant was eligible for home confinement in two weeks' time).

[9] *See, e.g.*, *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33 months sentence); *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to 7 months would be "highly inconsistent" with the 3553(a) factors).